

**NUMBER 13-08-00498-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**JAMES DEAN COX,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

**On appeal from the 36th District Court
of San Patricio County, Texas.**

---

**MEMORANDUM OPINION**

**Before Chief Justice Valdez and Justices Yañez and Garza
Memorandum Opinion by Justice Yañez**

Appellant, James Dean Cox, was convicted of possession of methamphetamine weighing four grams or more but less than two hundred grams with intent to deliver, a first-degree felony.[1] Appellant was sentenced to twenty years' confinement, after the jury found

---

[1] *See* Tex. Health & Safety Code Ann. § 481.112(a), (d) (Vernon 2010).

that appellant was a repeat felony offender.[2]  By one issue, appellant contends that the evidence is legally insufficient to support a finding that the substance found in his residence was methamphetamine.[3]  We affirm.

## I. BACKGROUND

After Secret Service agents received notice that appellant's wife, Rebecca Cox, used a counterfeit twenty-dollar bill, the agents requested and received permission from Rebecca to search the Coxs' residence.  Special Agent Ronald Adams testified that, while searching the drawers of a desk in appellant's home, he found a digital scale next to a "Crown Royal bag" containing "a baggie of what appeared to be meth" along with "some blue spoons and paraphernalia."  According to Special Agent Adams, there was a large baggie containing many smaller baggies and a lock box containing a box of syringes in a dresser drawer.  Special Agent Adams identified State's exhibit eighteen as "the bag of meth that was inside the Crown Royal bag."  The trial court then admitted, without objection, State's exhibit eighteen into evidence.  Special Agent Adams stated that Rebecca was released to the custody of the San Patricio County Sheriff's Office and that he and Special Agent Dan Morales then transported the evidence to the Sheriff's Office and "turned it over to the deputies."

---

[2] *See* TEX. PENAL CODE ANN. § 12.42(c)(1) (Vernon Supp. 2009).  Appellant pleaded "true" to the enhancement allegation in the indictment.

[3] We note that in his brief, appellant generally asserts that the issue he presents for review is whether "[t]he evidence presented by the State was insufficient to prove all of the elements of the offense."  Appellant does not cite the law pertaining to legal or factual sufficiency review; however, in his prayer, appellant requests an acquittal and does not request a remand for a new trial.  Therefore, we construe appellant's issue as a challenge to the legal sufficiency of the evidence.  Furthermore, although appellant generally states that the evidence is insufficient "to prove all of the elements of the offense," he only specifically challenges whether the evidence was sufficient to prove that the substance was in fact methamphetamine.  He does not argue that any of the other specific elements of possession of methamphetamine with intent to deliver were insufficient.  Therefore, we will not address those unchallenged elements.

Special Agent Morales testified that, while he was searching the kitchen in appellant's residence, Special Agent Adams asked him to come to the bedroom. Special Agent Adams then showed Special Agent Morales a Crown Royal bag containing a plastic baggie with what Special Agent Morales said he believed was methamphetamine. Special Agent Morales testified that he then continued searching the bedroom, and he located some syringes, a scale, and what he described as "little baggies used for the distribution—or what [he has] known to be used for distribution of narcotics and methamphetamine."

Special Agent Morales identified State's exhibit ten as "some sort of bag" containing a spoon, a syringe, a plastic cup, and a plastic baggie containing "residue." Special Agent Morales stated that State's exhibit six was a lock box that contained "some syringes and baggies, and . . . one of those little zipper bags." Special Agent Morales identified State's exhibit thirteen as "the little plastic baggies used for packaging drugs for sale." Special Agent Morales opened State's exhibit fifteen, which is described in the record as a cosmetic bag, and stated that it contained a spoon and some syringes. Special Agent Morales testified that two digital scales were found in appellant's residence and that these scales were "marked as evidence" because they "are usually used to measure a quantity of drugs to be sold." When the State asked if he recognized State's exhibit eighteen, Special Agent Morales responded, "Yes, this is the quantity of methamphetamine that was located inside this Crown Royal bag." The trial court then admitted State's exhibits six through Seventeen.[4]

---

[4] State's exhibit nine is a picture of a "pink flowered bag." State's exhibit eleven is a picture of the Crown Royal bag. State's exhibit twelve is described in the record as a "small can with contents" and when asked to describe what was inside State's exhibit twelve, Special Agent Morales said, "What appears to be marihuana and some—a plastic baggie with some marihuana residue and part of a business card, and looks

Special Agent Morales testified that Rebecca and appellant were arrested, and he drove with Special Agent Adams to the San Patricio County Sheriff's Office. He then provided a receipt to Deputy Mike Mejias for the drug items the agents "took out of the house, or what [he] believed to be drug items."

Deputy Mejias testified that he works for the San Patricio County Sheriff's Office and is currently a narcotics investigator with "about fifteen years' experience working in narcotics investigations." According to Deputy Mejias, Special Agent Morales "handed" him some drug evidence and paraphernalia and signed a receipt indicating that Deputy Morales had custody of that evidence.

Deputy Mejias stated that he recognized State's exhibit eighteen, the baggie containing a white substance, and that it was the item that Special Agent Morales gave him. Deputy Mejias believed that the white substance found at appellant's residence was methamphetamine. Deputy Mejias placed the item in an envelope and filled out an "evidence tag." According to Deputy Mejias, he later transported the evidence to the Texas Department of Public Safety Laboratory in Corpus Christi, Texas. Deputy Mejias received a report from the lab that was admitted into evidence, without objection, as State's exhibit one. Deputy Mejias testified that the report indicated that the "exhibit" that he submitted has a net weight of 93.48 grams, and contained methamphetamine.

Deputy Mejias obtained a statement from appellant. According to Deputy Mejias, appellant stated that he wanted to discuss the methamphetamine found at his residence and "[i]ndicated that he had bought the methamphetamines [sic] and he had it there at the

---

to me like—I don't know what it's called—but a push rod what they use to push drugs down into a pipe or something like that. It's just a little—looks like it's on a key chain." State's exhibit fourteen is described in the record as a "small plastic tray," State's exhibit sixteen is described as a "small mirror," and State's exhibit seventeen is a box of syringes.

4

house, and it was his and several of his friends." The State then read appellant's signed statement into evidence. In it, appellant states:

> My name is Jimmy Cox. I am 51 years old. . . . I would like to speak to Agent Mike Mejias about some methamphetamine that were [sic] found in my house by some agents with the Secret Service. I am giving this statement without any threats from Agent Mejias or any other peace officer with the San Patricio County Sheriff's Office or the Secret Service.
>
> . . . .
>
> I would like to say that on Friday, May 25th, 2007[,] I received $1,500 in U.S. currency from some men that I would like not to identify to purchase a quantity of methamphetamine. I purchased a little over two ounces of methamphetamine for $2,000 in U.S. currency on Monday, May 28th, 2007 from a person in Corpus Christi, Texas.
>
> The other persons that I do not wish to identify were going to pick up their methamphetamine from my house sometime tonight. I only had $550 worth of the methamphetamine that were [sic] for me, I would say that about 14 grams of the methamphetamine were for me. I don't make any money from the methamphetamine at all. I am a user of the drug, and I do not sell it for profit. I would say that I have swapped the methamphetamine. What I mean about swap is that I have about ten friends that use methamphetamine, and when they do not have any I will give them some if I have it. My close friends that I'm talking about do the same for me if I do not have the drug. My wife Becky knows that I am a user of methamphetamine. I was told that methamphetamine weighed with packaging about 70 grams, and that's about what I purchased.
>
> That's about all I know about the methamphetamine that were [sic] found in my house. The above statement is true and correct to the best of my knowledge.

Appellant testified that he admitted that the methamphetamine found in his home belonged to him because the arresting officer told him that if appellant took responsibility for the drugs, his wife would not be charged. Appellant also claimed that Officer Mejias then said that "things would be made a lot easier or [appellant's] wife wouldn't be charged

5

if [appellant] gave him a statement."[5] Appellant stated that he then "came up with a bogus story and gave it to [Deputy Mejias]." According to appellant, he did not know that there were drugs in his home, he was not in the business of delivering or selling drugs, and he had never seen the lock box found in his home. Appellant admitted that he knew there was a "significant risk" involved in making his statement to Deputy Mejias but took the risk because he was willing to "go to the penitentiary for [his] wife, keep her out, yes."

On cross-examination, appellant stated that his wife was convicted and sent to the "T.D.C.," and therefore it was "time the truth came out." When asked, "So if your wife had not been convicted then you would be standing by this statement as true?", appellant replied, "I would, sure would."

### III. Legal Sufficiency

By his sole issue, appellant challenges the legal sufficiency of the evidence supporting a finding that the substance found at his residence was methamphetamine. Specifically, appellant states that "[t]he only evidence that was presented by the State that the contraband was methamphetamine was in the form of a lab report from the Department of Public Safety." Appellant appears to argue that the evidence is insufficient because a qualified expert failed to testify regarding the results of the test and the parties did not enter a written stipulation stating that the substance was methamphetamine.[6] Finally, appellant

---

[5] Deputy Mejias testified that he did not make such a statement to appellant.

[6] We note that appellant complains that there was no *written* stipulation regarding the lab report's accuracy. However, at trial the following exchange occurred outside the presence of the jury:

| [The State]: | Apparently [appellant's defense counsel] and [appellant] have agreed to stipulate to the methamphetamine as being methamphetamine, and its weight as indicated on the lab report by Donald Thine. |
|---|---|
| [Trial Court]: | Do you have a written stipulation? |

states that "[t]he problem with the State's case is that the lab report does not state that the substance it refers to in the report is the same substance collected from the home of the

---

| | |
|---|---|
| [The State]: | No, sir, I don't. |
| [Trial Court]: | Okay. So how do you intend to introduce that evidence? |
| [The State]: | Just via the lab report and his no objection. |
| [Trial Court]: | Why don't you get that exhibit marked and offered at this time before the jury comes in, and then it will be a fact that has been taken care of outside the present [sic] of the jury, and it can be redone formally in the presence of the jury. |
| [The State]: | You said you wanted [defense counsel] to sign it? |
| [Trial Court]: | No, just want to be sure it's been marked. Show it to [defense counsel]. Make your proffer at this time. |
| [The State]: | Your Honor, State would move to admit State's [e]xhibit [n]umber 1, the lab report from D.P.S. |
| [Defense Counsel]: | May I confer with [appellant], Your Honor? |
| [Trial Court]: | You certainly may. |
| [Defense Counsel]: | [Appellant] agrees, Your Honor, we have no objection. |
| [Trial Court]: | I'm going to show it as already admitted, but I'll allow it to be reoffered and readmitted before the jury as a formality. [Appellant], you understand that you have the absolute privilege as a person accused of this crime to require the State to prove each and every element of the charge? |
| [Appellant]: | Yes, sir. |
| [Trial Court]: | And what I understand [defense counsel] is stating, and you're basically stating, is you're not necessarily challenging what the substance was nor the amount of the substance, that's not the issue, the issue is did you intend to possess it with the intent to deliver. That's going to be what you're really fighting about, not some challenge about the weight's wrong or what the chemical is wrong; is that correct? |
| [Appellant]: | That's correct, it's my understanding that it's already been tested by the D.P.S. |

We also note that there is a document in the record marked as State's exhibit twenty, which is a stipulation of drug evidence signed by appellant. It states that appellant "stipulates that the item marked as State's exhibit 18 contains 93.48 grams of Methamphetamine aggregate weight, including adulterants and dilutants." This document, however, was not admitted into evidence.

7

defendant on the date alleged in the indictment."[7]

## A.  Standard of Review and Applicable Law

In conducting a legal sufficiency review, we view the relevant evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[8]  We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact.[9]  Instead, we consider whether the jury reached a rational decision.[10]

Legal sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge.[11]  Under a hypothetically correct jury charge in this case, a person commits an offense of possession of methamphetamine with intent to deliver, if he knowingly manufactures, delivers, or possesses with intent to deliver methamphetamine.[12]

## B.  Analysis

It appears that appellant is challenging as legally insufficient the evidence that the substance found in his residence was methamphetamine because the lab report was allegedly improperly admitted into evidence; however, appellant's complaint is without merit

---

[7] We note that appellant has not cited any authority for these assertions.

[8] *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006); *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004).

[9] *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd).

[10] *Beckham*, 29 S.W.3d at 151.

[11] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd).

[12] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a).

because "[o]ur review of 'all of the evidence' includes evidence that was properly and improperly admitted."[13]  Here, the complained-of lab report was admitted into evidence without objection.  Therefore, we must consider it in our legal sufficiency review.

Special Agent Morales testified that State's exhibit eighteen was the baggie filled with what he believed to be methamphetamine found in appellant's residence.  Special Agent Morales stated that he gave that evidence to Deputy Mejias at the Sheriff's Office.  Deputy Mejias identified State's exhibit eighteen as the item that Special Agent Morales had given to him.  Deputy Mejias testified that he took the evidence given to him by Special Agent Morales to the Texas Department of Public Safety lab with an evidence tag.  Deputy Morales stated that the report he received from the lab showed that the substance, described in the report as "Exhibit 1," was methamphetamine.  The lab report states that the exhibit contains methamphetamine.  In his statement to Deputy Mejias, appellant admitted that the substance found in his home was methamphetamine and that he bought the methamphetamine for his own use and to supply his "friends" with the drug.  Therefore, viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found that the substance found at appellant's residence was methamphetamine beyond a reasonable doubt.[14]  The evidence was legally sufficient to support the verdict.  We overrule appellant's sole issue.[15]

---

[13] *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[14] *See Hooper* , 214 S.W.3d at 13; *Escamilla*, 143 S.W.3d at 817.

[15] Appellant asserts that the lab report does not state that the substance tested was the same substance collected from his residence.  However, in a legal sufficiency review, we must review all of the evidence including evidence that was allegedly improperly admitted.  *See Clayton*, 235 S.W.3d at 778.  We note that appellant merely states that his sole issue is a challenge to the sufficiency of the evidence and asks for an acquittal.  However, to the extent that appellant challenges the admissibility of the lab report, we conclude that he has waived this issue because he has not provided a clear and concise argument with appropriate citations to authorities.  *See* TEX. R. APP. P. 38.1(i).  Nonetheless, appellant did not preserve this

## IV. CONCLUSION

We affirm the trial court's judgment.

LINDA REYNA YAÑEZ,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Delivered and filed the
27th day of August, 2010.

---

issue for appellate review because at trial, appellant did not object to the lab report on any basis. *See id.* R. 33.1(a). In fact, appellant stated that he had no objection to admission of the lab report.